**GLUCK LAW FIRM P.C.**
Jeffrey S. Gluck (SBN 304555)
 Jeff@GluckIP.com
602 N. Sweetzer Avenue
Los Angeles, California 90048
Telephone: 310.776.7413

**ERIKSON LAW GROUP**
David Alden Erikson (SBN 189838)
 david@davidkerikson.com
S. Ryan Patterson (SBN 279474)
 ryan@davidkerikson.com
200 North Larchmont Boulevard
Los Angeles, California 90004
Telephone: 323.465.3100
Facsimile: 323.465.3177

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DONALD ROBBINS, an individual; and NOAH DAAR, an individual;<br><br>Plaintiffs,<br><br>v.<br><br>OAKLEY, INC, a California corporation; and DOES 1-10 inclusive.<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR COPYRIGHT INFRINGEMENT AND RELATED CLAIMS**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Donald Robbins and Noah Daar (sometimes collectively referred to as the "Artists") hereby complain against Defendants Oakley, Inc. ("Oakley"); and Does 1-10 inclusive, as follows.

## SUMMARY OF THE CASE

1.  The Plaintiffs are highly acclaimed artists, well known in the contemporary graffiti art world.

2.  In 2015, the Artists painted outdoor Murals in San Francisco (the

"Murals," shown below) as part of a curated global art project called Meeting of Styles. Consistent with a dominant theme of graffiti art, the Murals consist largely of the highly stylized signatures of each of the Artists.





3.     In April of 2017, Oakley inexplicably featured the Murals as the centerpiece of a marketing campaign (the "Campaign"), without the Artists' knowledge or consent. The Campaign included the Murals reproduced inside Oakley's retail stores, covering store shelving and product displays as the sole creative element dressing and presenting the store and product. Oakley also

featured the Murals in consumer advertising materials and product catalogues, examples shown below.







COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

4. If this literal misappropriation was not bad enough, Oakley also superimposed its own Oakley brand logo next to the Murals throughout the Campaign, as if the Oakley brand created the Murals itself, or, alternatively, as if the Oakley brand was endorsed by the Artists.

5. Defendants' exploitation of the Artists' work is outrageous and damaging in that the Artists have carefully avoided any association with corporate culture and mass-market consumerism. Indeed, each of the Artists have been diligent in controlling distribution channels of their work. Despite offers, neither Robbins nor Daar have ever made their original art available as part of a corporate advertising campaign, partly for artistic reasons but also because doing so would diminish the value of their work. In particular, nothing is more antithetical to the Artists' coveted and valuable "street cred" than association with mass-market appropriation of outsider imagery—of which Oakley's campaign is the epitome. People who recognized Plaintiffs' work in the campaign would have concluded that the Artists "sold out" diminishing the value of their work and reputation.

6. Shockingly, when Plaintiffs complained to Oakley about the unauthorized use of their Murals, counsel for Luxottica, on behalf of Oakley, responded to Plaintiffs' concerns by acknowledging that Oakley had used their work, but then offensively suggested that their artwork does not have any "modicum of creativity" and is just "generic" markings not "eligible" for any protection, virtually degrading an entire global community of graffiti artists. [See Exh. A, letter from Luxottica, incorporated by this reference.]

7. Plaintiffs bring this straightforward copyright infringement claim for misappropriation of their original graphic expression. Because Oakley altered and rearranged Plaintiff's signatures in their Murals, Plaintiffs also bring claims for alteration and removal of copyright management information under the Digital Millennium Copyright Act.

## JURISDICTION AND VENUE

8. Plaintiffs bring this action for copyright infringement (17 U.S.C. Section 101 et seq.); violation of the Digital Millennium Copyright Act (17 U.S.C. § 1202); and unfair competition under California law.

9. This Court has original subject matter jurisdiction over this action and the claims asserted herein, pursuant to 28 U.S.C. Section 1331 ("federal question jurisdiction") and 1338(a)-(b) ("patent, copyright, trademark and unfair competition jurisdiction") in that this action arises under the laws of the United States and, more specifically, Acts of Congress relating to patents, copyrights, trademarks, and unfair competition. This Court has subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. Section 1367(a)("supplemental jurisdiction") in that they are so related to the federal law intellectual property claims in the action that they form part of the same case or controversy under Article III of the United States Constitution.

10. Defendants are subject to the personal jurisdiction of the Court because they do or transact business in, have agents in, or are otherwise found in and have purposely availed themselves of the privilege of doing business in California and in this District.

11. Venue is proper in this District pursuant to 28 U.S.C. Section 1391(b)(1)-(3) because a substantial part of the events or omissions giving rise to the claims occurred in this District in that, inter alia, the infringing advertising was used here.

## THE PARTIES

12. Plaintiff Donald Robbins is, and at all times relevant herein has been a resident of Oakland, California, and is a well-known graffiti artist, producing works under the pseudonym "KEPTIONE."

13. Plaintiff Noah Daar is, and at all times relevant herein has been a

resident of Oakland, California, and is a well-known graffiti artist, producing works under the pseudonym "DJ RAKUS."

14. Defendant Oakley is a California corporation authorized to do business, and doing business, in Los Angeles County. It maintains a global headquarters in Lake Forest, California. Oakley is a subsidiary of the Italian company Luxottica, one of the world's largest companies, with a market capitalization of $25 billion.

15. Plaintiffs are ignorant of the true names and capacities of the Defendants sued herein as Does 1-10, inclusive, and therefore sues said Defendants by such fictitious names. Plaintiffs will amend this Complaint to allege the true names and capacities when the same has been ascertained. Plaintiffs are informed and believes, and thereon alleges, that each fictitiously-named Defendant is responsible in some manner for the occurrences herein alleged, and that Plaintiffs' damages as herein alleged were proximately caused by their conduct.

16. Each of the Defendants acted as an agent for each of the other Defendants in doing the acts alleged and each Defendant ratified and otherwise adopted the acts and statements performed, made or carried out by the other Defendants so as to make them directly and vicariously liable to the Plaintiffs for the conduct complained of herein.

## GENERAL ALLEGATIONS

**A. Plaintiffs**

17. Plaintiffs are well-known contemporary graffiti artists.

18. Robbins, known by his artist pseudonym KEPTIONE, has participated in gallery shows and art festivals, and is highly sought after for commercial collaborations and endorsements, although he rarely agrees to participate in such endeavors.

19. Plaintiff Daar, known by his artist pseudonym DJ RAKUS, is also a highly sought-after artist. Like Mr. Robbins, Mr. Daar rarely chooses to lend his

artwork to consumer products of any kind.

**B.     The Murals**

20.    In 2015, Plaintiffs were invited by a global art program called Meeting of Styles to create outdoor Murals in San Francisco. Participating artists work without compensation, in furtherance of the project's mission. On or around September 2015, the Plaintiffs accepted the invitation and created the Murals in San Francisco.

**C.     Oakley's Advertising Campaign Featuring the Murals**

21.    In April 2017, in an effort to increase sales revenues, attract new young customers, and target a young urban demographic, Oakley developed and launched the international multi-media Campaign featuring the Artist's Murals as the centerpiece element (the "Campaign"). The Murals were reproduced and incorporated into the Campaign without Plaintiffs' authorization – or even their knowledge.

22.    In this regard, Oakley, undertook to unlawfully copy, and did unlawfully copy, Plaintiffs' artwork, including, in some instances, their names and stylized signatures, for the purpose of incorporating the Murals into the Campaign. On information and belief, Oakley chose to include Plaintiffs' artwork signatures in its advertising, because of its aesthetic value and to give the false impression that the Artists are affiliated with and endorse Oakley. Indeed, Oakley has used graffiti art in its advertising materials many times, reflecting the effectiveness of the genre in attracting consumers.

23.    The Campaign focused heavily on the Murals, using their names and stylized signature as the centerpiece. The Murals covered the interior of Oakley retail stores; appearing on shelving, display cases, advertising materials, signage, on Oakley's social media and even in product catalogues and lookbooks. The Murals are the only creative element dressing and presenting the product

throughout the entire Campaign.

24. The purpose of the Campaign was to (1) promote the launch of Oakley's new Crossrange eyewear collection and (2) benefit the reputation and recognition of the Oakley brand as a whole. The Campaign was intended to (and on information and belief, did) engage customers, increase foot-traffic into Oakley stores, and increase sales revenues. The Campaign courted a new demographic for Oakley: consumers seeking an association with urban cool.

25. That the Murals were the centerpiece of the Campaign is obvious—in that the Murals were the *only* creative element dressing stores and the product. For example, Oakley's product catalogue consisted of a variety of shots of models wearing the product placed directly in front of the Murals.

26. On information and belief (based on the content of the Campaign), the Campaign was designed to draw in and engage the consumers to whom Oakley hoped to sell products.

27. On information and belief (based on the nature of the advertising) the Campaign was seen by many consumers worldwide. The Campaign was broadcast across a network of official Oakley social media channels, appeared inside Oakley retail stores, on advertising materials and store signage, and in product catalogues.

28. Oakley reproduced these unauthorized copies of Plaintiffs' artwork without Plaintiffs' consent.

29. Oakley's use of Plaintiffs' artwork is for the purpose of its own advertising and brand enhancement.

30. As a result of Defendants' misconduct as alleged herein, Plaintiffs' reputations and careers have been irreparably tarnished, diminishing the value of their works and decreased revenue from the sale of artworks.

31. Oakley benefitted from the misappropriation and infringement in a number of ways, including but not limited to the following: (i) they enjoyed the

increased foot-traffic and sales increases generated by the advertisements, and (ii) the association with Plaintiffs increased the value, image, and positioning of the Oakley brand.

32. Plaintiffs have sustained significant injury and monetary damages as a result of Defendants' wrongful acts as alleged in this Complaint. Plaintiffs are at present unable to ascertain the full extent of the monetary damages they have suffered by reason of said acts. In order to determine the full extent of such damages, including such profits of Defendants as may be recoverable, Plaintiffs will require an accounting from each Defendant of all monies generated from their wrongful conduct.

33. Plaintiffs are informed and believe, and thereon allege, that Defendants' alleged conduct was, and continues to be, intentional, deliberate, willful, wanton, committed with the intention of injuring Plaintiffs, and depriving Plaintiffs of Plaintiffs' legal rights; was, and is, despicable conduct that subjects Plaintiffs to a cruel and unjust hardship; and was, and continues to be, undertaken with oppression, fraud and malice. Accordingly, Plaintiffs are entitled to an award of punitive or exemplary damages.

34. Defendants' actions have caused, and will continue to cause, damage and irreparable harm to Plaintiffs (as described above) and are likely to continue unabated, thereby causing further damage and irreparable harm to Plaintiffs, unless preliminarily and permanently enjoined and restrained by the Court.

## First Claim For Relief For Copyright Infringement
### (By All Plaintiffs, Against All Defendants)

35. Plaintiffs incorporate herein by this reference paragraphs 1 through 34 as if set forth in full in this cause of action.

36. Plaintiffs' graphic expression, as shown in the image above, is an original work of authorship and constitutes copyrightable subject matter under the

laws of the United States. The image was fixed in a tangible medium of expression, as described above. An application for a federal registration of the artwork has been filed with the Register of Copyrights, dated June 4, 2018; and the deposit, application, and fee required for registration have been delivered to the Copyright Office in proper form.

37. At all times since the creation of the graphic expression, Plaintiffs have complied with all aspects of the Copyright Acts of 1909 and 1976 and all other laws governing copyright, and secured the exclusive rights and privileges in and to the graphic expression. Plaintiffs are the sole joint-owners of all rights, title, and interest in and to the copyright in the graphic expression.

38. Subsequent to Plaintiffs' creation of the graphic expression and (on information and belief) with full knowledge of the rights of Plaintiffs, Defendants infringed Plaintiffs' copyright by copying, as described above, the artwork and exhibiting such copied images as advertising materials.

39. All of Defendants' acts were performed without the permission, license or consent of Plaintiffs.

40. By reason of Defendants' acts of copyright infringement as alleged herein, Plaintiffs have suffered and will continue to suffer substantial damage to Plaintiffs' businesses in the form of diversion of trade, loss of profits, and a diminishment in the value of Plaintiffs' works, rights, and reputations, in part as described above, all in amounts that are not yet ascertainable but not less than the jurisdictional minimum of this court.

41. By reason of its infringement of Plaintiffs' copyright as alleged herein, Defendants are liable to Plaintiff for the actual damages incurred by Plaintiff as a result of the infringement, and for any profits of Defendants directly or indirectly attributable to such infringement.

## Second Claim For Relief For Falsification of Copyright Management Information in Violation of 17 U.S.C. § 1202
### (By all Plaintiffs, Against all Defendants)

42. Plaintiffs incorporate herein by this reference paragraphs 1 through 41 as if set forth in full in this cause of action.

43. The Murals consisted of the stylized pseudonyms and signatures of both Artists. During development of the Campaign, Oakley rearranged and removed portions of Plaintiffs' signatures from the reproductions of the Murals. By altering the signatures in the reproduction, Oakley intentionally altered/removed copyright management information with the intent to induce, enable, facilitate, or conceal an infringement of Plaintiffs' rights under the Copyright Act. Such conduct is a violation of 17 U.S.C. § 1202.

44. Defendants' removal of copyright management information was made without the knowledge or consent of Plaintiffs.

45. Defendants' removal of copyright management information was done intentionally, knowingly and with the intent to induce, enable, facilitate, or conceal Defendants' infringement of Plaintiffs' original work. Defendants also knew, or had reason to know, that such removal and alteration of copyright management information would induce, enable, facilitate, or conceal Defendants' infringement of Plaintiffs' copyrights in the Murals.

46. Plaintiffs have sustained significant injury and monetary damages as a result of Defendants' wrongful acts as hereinabove alleged. Plaintiffs are at present unable to ascertain the full extent of the monetary damages they have suffered by reason of said acts. In order to determine the full extent of such damages, including such profits of Defendants as may be recoverable under 17 U.S.C. § 1203, Plaintiffs will require an accounting from each Defendant of all monies generated from their wrongful falsification, removal and alteration of copyright management

information.

47. In the alternative, Plaintiffs elect to recover statutory damages pursuant to 17 U.S.C. § 1203(c)(3) in a sum of not more than $25,000 from each Defendant for each violation of 17 U.S.C. § 1202.

## PRAYER

WHEREFORE, Plaintiffs pray judgment against Defendants as follows:

1. That Plaintiffs are awarded all damages, including future damages, that Plaintiffs have sustained, or will sustain, as a result of the acts complained of herein, subject to proof at trial;

2. That Plaintiffs are awarded their costs, attorneys' fees and expenses in this action;

3. That Plaintiffs are awarded pre-judgment interest;

4. For an order permanently enjoining Defendants and their employees, agents, servants, attorneys, representatives, successors, and assigns, and any and all persons in active concert or participation with any of them, from engaging in the misconduct referenced herein;

5. That Defendants be ordered to immediately recall and remove any and all infringing advertisements from any and all remaining locations, physical or digital;

6. That Defendants be ordered to file with this Court and serve upon Plaintiffs' counsel within thirty (30) days after services of the judgment demanded herein, a written report submitted under oath setting forth in detail the manner in which they have complied with the judgment;

7. For disgorgement of all proceeds, and restitution of the moneys wrongfully received by Defendants as the result of their wrongful conduct;

8. For punitive damages in an amount sufficient to deter Defendants, and each of them, from their wrongful conduct; and

9. For further relief, as the Court may deem appropriate.

DATED: June 8, 2018                    GLUCK LAW FIRM P.C.


By:  \_\_\_\_/s/_____
     Jeffrey S. Gluck
     Attorney for Plaintiffs


## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on their claims on all issues triable by a jury.

DATED: June 8, 2018              GLUCK LAW FIRM P.C.

                                 By:    /s/
                                      Jeffrey S. Gluck
                                      Attorneys for Plaintiffs

# EXHIBIT "A"



Direct Dial (+1)516-918-3033
vmura@us.luxottica.com

April 11, 2018

**VIA E-MAIL & FEDERAL EXPRESS**

Jeff Gluck
Gluck Law Firm P.C.
602 N. Sweetzer Avenue
Los Angeles, California 90048
Jeff@GluckIP.com

Re:   **Your Client's Claims of Copyright Infringement Against Oakley, Inc.**

Dear Mr. Gluck:

Reference is made to your letter of March 20, 2018, in which you asserted on behalf of your client, Donald Robbins, that Oakley, Inc., Luxottica, and related parties (collectively, "**Oakley**") are using advertising materials that include copies of your client's original artwork, name, and signature.

As an initial matter, please be assured that Oakley vigorously protects its own intellectual property, and deeply respects the corresponding rights of others. In view of the foregoing, upon receipt of your claims we performed a swift investigation into the matter, and have concluded that Oakley has engaged in no infringement or wrongdoing whatsoever with respect to your client.

As you are aware, copyright protection subsists only in original works of authorship, and for a work of authorship to be original, it must possess at least some modicum of creativity. Because your client's generic, graffiti-style markings fail to meet this minimum threshold, they are not eligible for copyright protection, and cannot be infringed.

Furthermore, upon a review of Oakley's use of the ordinary graffiti-style content you assert belongs to your client, we observe that the relevant advertising campaign incorporated only a fraction of the larger work, and served merely as a backdrop to the main focal point of the image. Thus, even assuming for the sake of argument that your client's work were eligible for copyright protection, such de minimis usage by Oakley hardly gives rise to any credible claim of infringement.

We have learned that the relevant advertising campaign was live for a very short period of time. It was discontinued some time ago and never revived. Nevertheless, we have instructed all marketing channels to cease use of this material in the event it has remained posted



unintentionally in any context. We request that you kindly inform us of any use in contravention of these instructions, so that we may take action to have it removed accordingly.

In light of the above, we trust this matter has been settled to your client's satisfaction.

Nothing herein should be construed as any kind of waiver or release of rights or remedies, all of which are expressly reserved.

Sincerely,

Viviana Mura
Assistant General Counsel